We are asking you to vacate Mr. Lockhart's plea, both because of the Rule 11 error and because the plea is invalid under the Supreme Court's recent decision in Rehabe. I'll start with the Rule 11 issue, where the panel in this case was constrained by the three-factor test applied in the United States v. Massenburg. Okay, excuse me, Mr. Carpenter, if I could ask you a question before you begin on Massenburg. If there is a Rehabe error in this case, why wouldn't that dispose of the matter? It could, it absolutely could. You could decide this under Rehabe without citing Rule 11 issues. You could also enter into alternative holdings on each issue by guidance, I think, for future. How would we do that without issuing an advisory opinion? Because alternative holdings aren't advisory opinions, aren't dicta, and this Court and in our briefs, the Caporale case and also the Just Dance case, which said alternative holdings are not dicta, and it cites the Supreme Court's decision. So you're saying then that we can address the Rehabe, if there is a Rehabe error, we can also address the Massenburg question? Yes, our position absolutely is that it is. Okay, and you intend to address both today? I intend to address both. Okay. Our position is it is within the Court's discretion to decide either or both of those cases through alternative holdings. But what about the fact that Rehabe wasn't raised before the panel? Is that a problem for you? Have you raised that? So we don't think so for two separate reasons. One is it's an intervening decision, and we think this Court's decision in White set forth the standards for raising intervening decisions. Even separate and apart from that, we think that what this Court did in Sims would be appropriate here. Again, in Sims, this Court considered an issue that had been previously explicitly waived at the panel stage, and it was not based on an intervening decision, as the majority opinion makes clear. And nonetheless, the Court exercised discretion to consider that issue, but it had been briefed adequately and because it was a recurring issue. And we think both of those are here as well. To follow up on Judge Thacker's question, if one issue was raised before the panel and another issue was not raised before the panel, and the one issue that was raised before the panel, which was Massenburg-Dominguez-Bonita's issue, why wouldn't that be the logical one for us to address? Because it had the benefit of panel review. So, Your Honor, we think it is, again, within the Court's discretion to address either or both. Our position is not that you have to decide the rehafe issue. Our position is that it would provide an alternative basis for the same relief, and that because it's a recurring issue, it makes sense in terms of judicial efficiency for the Court to go ahead and address it. So, how can we avoid the rehafe? I have just the opposite problem, because it's the law now, right? Yes. The appellate court takes the law at the time it finds it. Yes, that's correct. And the time we find it, the Supreme Court has issued, right? So, how do we avoid it? So, I don't think you should. No, I understand that. But I thought you said we had discretion to do either one of these issues or both of them. Sure. You prefer both. Right. I prefer both. I do think the Court has discretion. And that's what I'm asking. What is the basis for that discretion? If this is the law now? Sure. So, I think, at least as applies to Mr. Lockhart's specific case, a remand over Rule 11 would put him in the same position as a remand on the rehafe issue. Right. If there is a rehafe error in this case, the plea is involuntary. And doesn't that stop everything, under your point of view? So, I absolutely think it should. And I won't at all fight the Court if it wants to hold it that way. I mean, Dominguez-Benitez, the Supreme Court essentially said, although in dictum, but said there's nothing that can overcome it. No amount of overwhelming evidence or anything else can overcome an involuntary plea. Right. I agree with that. I do think, just as a logical matter, the rehafe issue does kind of come first. Because the plea, if it's constitutionally invalid as a matter of due process, Dominguez-Benitez makes clear that is different from, more serious than, a standard Rule 11 error. So, it does make a lot of sense for the Court to address rehafe first for that reason. So, we would be happy to go that way if the Court wants to resolve it. I mean, I would ask, because it's been briefed, that the Court also clarify the Massenburg standard while it has good briefing on that issue in front of it. I think, again, on alternative holding, addressing both would provide guidance for litigants. So, is it your view or not that the Court is required to address the rehafe issue? So, I will not say it's required. I think it would be logical. I think it's absolutely within the Court's discretion. And if you think it's required, I'm fine with that outcome. I guess I just don't understand the rationale for not addressing it. I mean, we just can't ignore Supreme Court cases. I don't either. I absolutely think you should address it. But there must be, you know, because you're an honest advocate, there must be a rationale for not addressing it. So, I don't think there's a difference between required and should. Right. Absolutely. And I mean, I guess I think that this Court has discretion to decide whichever issues it thinks it's controlling. I'll answer. You'll find colleagues on the other side. I bet you'll give me answers. I take it you won't relief under rehafe because you'll get relief. You just want to clean up Mossenburg. Exactly. So, I think we get relief either way. And we think it makes sense for the Court to clean up Mossenburg because there are future litigants who might be in this position and shouldn't be constrained by the past in Mossenburg, which we think is inconsistent with the Mingus Benefes. For Mr. Lockhart in particular. But Mr. Carpenter, the sort of the restriction that you have argued against was the result of the panel opinion in Lockhart. And that panel opinion no longer exists. So, what is there to clarify? So, I don't think I agree with that entirely, Judge Diaz, because the panel in Lockhart felt constrained by Mossenburg. And so, I think future panels would similarly feel constrained. Now, I guess it is helpful that the government has at this point conceded that the restriction that the panel read Mossenburg to impose is not justified. But the government's concession isn't binding on future panels. It's binding on future panels. Nor is the panel's views in Lockhart. That is absolutely true. But what I would fear as a matter of sort of this Court institutional holdings and practice going forward is that a future panel, if Lockhart is gone to be sure, but a future panel might read Mossenburg in the same way that the Lockhart panel read Mossenburg. Talking about future panels and future litigants sounds like an advisory opinion. Why shouldn't we decide on the law of the Supreme Court law now and leave the future for another day? Again, I'm perfectly happy if the Court decides to rehave the issue, leaves the Rule 11 error for another day. I do think it's within the Court's discretion whether it enters alternative voting. We ought to be able to get some advice from you. Tell us what your position is. You keep saying we can do this, we can do that. But what do you want us to do? So our position is you should absolutely decide both. We think alternative voting are 100%— We can decide both. What should we do? You should decide both. You can decide both. And we think it provides guidance to courts and litigants to enter a binding holding on both decisions. Also— But you want us to give the advisory opinion. It's not advisory. It's not advisory. And what's important about it, too, is that it also simplifies the case going forward. Because if you decide only one of the two issues, perhaps the government takes it up to the Supreme Court. Supreme Court sends it back down, and then all of a sudden you have to decide the other issue. We think this is why alternative holdings make sense as a matter of judicial efficiency. If you decide this case on both grounds right now, it saves you from ever having to deal with it again. Mr. Cobb, what is the extent of your relief under rehave, if you win on it? What do you think the extent is? Would it mean the conviction is overturned? You didn't prove an element? Or does it mean that it's a do-over? What is the extent? What does it look like for you? Sure. So we think the relief is actually identical under either, which is that the plea is vacated as invalid and sent back to the district court for him to have the opportunity to either replead or go to trial. In fact, under the rehave error, we think the government will have to reindict because the indictment is effective as well, although that's kind of a subsidiary point. But we do think if it goes back, either way it goes back, we think that- But you haven't said you wanted to withdraw the plea or go to trial. That's why we're here. The reason we raise these issues is because Mr. Blackheart specifically advised me that if he had known of these penalties, he would not have played- Well, but there's a danger here of somebody coming up to this court and having not made a motion to withdraw the plea and not willing to state that he's going to trial, that we could be issuing all kinds of advisory opinions on the validity or lack thereof of a guilty plea, and then the thing goes back and somebody says, well, now I'm going to mull my options and well, after all, I think I'll stick with the bargain I made. So if you're not willing to say you're going to go to trial or you're not willing to say you're going to withdraw the plea and you haven't made a motion to withdraw the plea, are we just kind of issuing an advisory opinion here? No, Judge Wilkinson, and there's two particular points I would want to make in response to that. One is if hypothetically it goes back and he changes his mind and decides that he wants to the plea or plead guilty, what we have in that situation is a protection of the interest of justice because we know at that point that he has made that decision knowingly, voluntarily, in light of the full consequences. That's why we're concerned both under Rule 11 and under Rehabilitation. He didn't fully understand what he was pleading guilty to and what the consequences were. So if he goes back and has this change of heart that you suggest, we at least can know that his plea was a voluntary decision. The second point I want to make- Reissue a decision has got to have some sort of tangible effect and I'm just afraid that, you know, this will open the door to all kinds of attacks on guilty pleas where people are apparently happy with them but they just want some advisory opinion from this court as to whether they are valid or not. But let me, that problem aside, let me, are you saying that a rehab error or a Massenburg error, are you trying to convince us that those are structural errors? With respect to the rehab error, yes. With respect to the Massenburg error, no. Okay. Well, with respect to the rehab error, all right, in either Bowsley or Reiss or Rehab, does the Supreme Court ever so much as use the term structural error? Now, structural error is a term of art and the Supreme Court knows how to create structural errors when it wants to, and yet in all of these opinions, there is never so much, either in Bowsley or Rehab, there's never so much as a use of the term or an indication that it is, that the error is structural. Why would we get out in front of the Supreme Court and denominate something that the Supreme Court has simply not chosen to do? So in Bowsley and Rehab, the question of whether it was structural wasn't briefed to or presented by the parties because it wasn't relevant in the context of the particular case. No, but even in Bowsley, he was given a chance to, that didn't shut the matter down, all of the Bowsley era, what all the Bowsley court said was okay, invalid, so you have a chance to bring forward a colorable claim of innocence. Now, if it had been structural, I think everything would have been shut down, but that wasn't what Bowsley did. It says what this does is give you a chance to raise a colorable claim of innocence. It didn't shut things down. So no, I think the distinction there is that Bowsley is in the context of collateral review, and the Supreme Court has drawn a line. Yes, but there are many other cases like Dominguez Benitez and the Nieder opinion, which were in the context of direct review, and the Supreme Court has said even with cases of direct review, that elements errors are not structural, and Nieder says, you know, that even the omission of an element and an instruction to the jury is subject to harmless error analysis. The Supreme Court does not want to do away with harmless and plain error analysis, and you get Nieder and Cotton and Johnson, all of which involved elements errors, and the Supreme Court in each of those cases declined to say that they were structural. And so the difference with Nieder is that it's a different kind of error. In Nieder, the element was known to everyone at the time of the indictment, at the time of the trial. It was proven to the judge rather than to the jury. That's why it may have been harmless, but the element was never submitted in the jury trial. So I just, it's a different context. The error here is just different because no one at any point was aware of this, and so in cases to Henderson, it's a Supreme Court case that is directly on point with the structural error, and I agree. The court did not use the structural error label in Henderson, because the first that was decided in the late 70s, the first time that the Supreme Court ever used this particular phrase, structural error, structural defect, was in 1991 in the Arizona versus Rhode Island case. No, but the point I'm making is that elements errors, and what we're talking about in rehab is an elements error, and in time and time again, the Supreme Court has declined to toss elements errors and structural errors together. In fact, it's gone out of its way to separate them, and I just don't understand why we would be taking this adventurous course, and we would be doing it in the face of rehab itself, because Justice Breyer, toward the end of the opinion, says the government asked us to hold that any error in the instructions, jury instructions in this case, was harmless, but the law court did not address that question. We therefore leave the question for the courts to decide on on remand. Now, if that rehab error was remanded in rehab itself for harmless error analysis, isn't it adventurous for us to go out in front of rehab to this extent and say to the Supreme Court, oh no, this is a different context what you really meant was it was structural? No, you are, because on remand, the parties in rehab can raise the structural error point. Structural errors simply show that prejudice, that there is no prejudice inquiry. It doesn't eliminate entirely the framework of plain error and harmless error analysis. That's not the way I understand structural error. I think if there's an absence of counsel or there's racial bias in some way in the proceeding, that's it. There's no particular prejudice inquiry. That's it. So I'll say that's not consistent with the way that the Supreme Court analyzed structural error in the Weaver case, which lays out this dichotomy between direct appeal structural errors and collateral abuse structural errors. The other point I would make is that Henderson indicates a direct point here. And although it doesn't use the structural error label, it does exactly what the Supreme Court has done in all of its other cases that have been labeled later as structural errors. That is, it wipes out the plea, even though it assumed A, that there was overwhelming evidence of guilt available, and it assumed B, that had he been properly advised about the error, he would have pleaded guilty. Then why would Bousley use the term structural error? Why would Bousley go on and allow an inquiry into whether there was a colorable claim of innocence? Well, for two reasons. One is that it was in the context of collateral abuse, which, again, distinct from direct appeal. Two is that... But so was Henderson. That is true. Henderson was, and I will say... I mean, it's hard to distinguish those two based on Bousley being collateral attack, when Henderson was a collateral attack. So I acknowledge that. And I will say that the Supreme Court drew this distinction between collateral review and direct appeal in the Weaver case, really for the first time, and made it clear that we have to look at them differently in these two contexts. Right, which is what I'm curious to get to, is why after Weaver, and I understand Weaver says that we treat them differently, why then do we look to the collateral attack cases? I mean, you're looking to Bousley and Henderson collateral attack cases. Under Weaver, we treat separately, instead of looking at the Cotton-Johnson-Neder line, which are not collateral attacks, where the court says there that they're not structural error. I mean, they actually address the question. And so the big reason to look at Henderson is dealing with the type of errors that we have here. And Netter and all of those other cases are dealing with a different type of error. In those cases, again, the parties were aware of the element. It was either just submitted to the wrong fact finder, Netter, where it was given to the judge instead of the jury, or in other cases like Higgs and this court in Stevenson, it was found by the pedigree, it was actually submitted appropriately to the jury, so the only error was a pure indictment error because it wasn't included in the indictment. And the other reason to distinguish Bousley is that it doesn't reach the prejudice inquiry. Structural error comes in under prejudice. And if you look at Bousley, it has two separate lines of analysis. To overcome a procedural default, you can either show cause and prejudice, or you can show actual innocence. Structural error is only relevant to the prejudice inquiry under cause and prejudice. The Supreme Court found that there was no cause for the default in that case, so it never addressed the prejudice inquiry, which is where the structural error analysis was. Whether it comes in, however it comes in, it's still coming in. If this individual had known that the government had to prove his status as a felon, how can that possibly have made any difference to his decision whether or not to plead? He spent 78 or 76 months in jail. How hard a case would that be for the government to work up? So there are a couple of points there, Judge Wilkinson. Before you answer it, can I just ask you a question because I've been trying to get it in? I may never get it in. If we should conclude that this is not structural error, do you lose? I thought you made quite an extensive argument that if we review otherwise, that you would still win. Not as quickly, perhaps. Not as quickly, perhaps. Yes, we do think we're going to win under a reasonable probability, and that actually goes in part to Judge Wilkinson's question about what would have been different here. I think there are a couple of things. One is that under rehabilitation, we don't think the government can get by simply by showing he served 60 years in jail. I'm sorry to take up some of your last minutes. I've been curious about the defendant's statement at sentencing. He says, quote, I would like to apologize to the United States for possessing a firearm when I knew I was a felon. How do you deal with that? So we think that allocution statement doesn't really affect the rehab analysis at all, because what we think he's doing there is simply taking responsibility for the events that he has pled guilty to committing. We don't think you can read into that statement. But he's admitting, I knew I was a felon when I possessed a firearm, and he explains why. I knew I was a felon, but I was trying to protect my family. So again, we don't think that you can read into that statement an admission of an element that he was unaware of. And we think that the government is required under rehabilitation to prove more than that he just knew he was a felon or that he didn't know about the element. He didn't know about the element. That's the error, because no one knew about the element. But the question is whether it would have made any difference. Did he lack the knowledge, or was there a lack of proof? And as Judge Wilkinson said, he served time in jail knowing that he was a felon. And then Judge Rushing points out that he says, I knew I was a felon, and he's apologizing to the judge because I knew I was a felon. Now, it seems to me... This gets us to the question that was reserved specifically by the majority opinion in rehab. Justice Breyer, in response to Justice Alito's dissent, says we're not deciding what precisely the government has to prove under these other crimes. That's at page 2200. We think the correct reading of rehabilitation ultimately will be, and I acknowledge this is an error and should to be litigated on remand and many others, we think that the government must prove that he knew that his felon status rendered him a prohibited person so that he couldn't possess the firearm. We think that there's support for that at page 2198 where the Supreme Court cites the But before you have to sit down, did you finish answering Judge Motz's question fully? Because I was curious to hear your answer. Sure. And so I think if we do find this is a non-structural error, he still prevails under reasonable probability because he could have contested the knowledge element. His theory for doing so might have been that because of his intellectual disability, because of the fact that this started in juvenile court, he might have understood whether his felon status or whether his prior conviction status prohibited him from possessing a firearm. How does could have and might have established reasonable probability? That didn't seem to get close to reasonable probability. Those are things that might have happened, could have happened by your own language, but how does that meet that burden? So I think it's important that reasonable probability doesn't require any kind of clear that even if you cannot make a more likely than not showing, you still can satisfy the reasonable probability standard as long as showing is sufficient to undermine the court's confidence that this necessarily would have happened. So in other words, if it's a 50-50 case, we win. If it's a tie, that's enough to undermine your confidence that the outcome would have been the same. You think might have could have equals 50-50? Absolutely. And I think that, again, when we get to reasonable probability under Rahae, all of the other factors on reasonable probability that we argued in the Rule 11 context come back into play. Okay, but Mr. Carpenter, excuse me, the Supreme Court doesn't say in Rahae does it that you engage in a reasonable probability inquiry. It doesn't. It says we express no opinion on what the government has to prove. They kind of toss the ball back. Exactly. So where do you import the reasonable probability standard into what we do if we find a Rahae error? Sure. So I think it's an alternative thing. I think our view is when they sent back for consideration that the proper answer to that is this is structural and you don't do reasonable probability. Okay, but if you don't, we understand that's number one. Exactly. So that's number one. Number two is if you find that it is not a structural error, then we would imagine and the government has argued that the probability standard applies. But the standard is plain error, right? You have to go down those elements. Right. There's error, it's plain, and then how it affects it. And then how it affects the standard. Right. And so, I mean, we think that... And I thought you argued that in your brief, alternatively. I did, alternatively. Okay. I mean, we do think the structural error would be the cleaner way in light of Henderson and Weaver and McCoy, but we do agree that if you... One of the things that bears on the reasonable probability question is this is an easy case for the government to work out. 922G cases are often, you know, there may be some difficult ones, but this is an easy one. And he was trying to, as far as the felony status, he'd served an extensive length of time in jail. And as far as the knowledge of possession, he was trying to stuff the pistol under the car seat as the officers approached. Now, why did he plead guilty? Because the case would have been dead before a jury faced with those facts. It's an easy case for the government to work up. It's a hard, hard case to prevail before a jury when you're trying to stuff that pistol under the seat and when you've served that amount of time. And when you say, why did he plead guilty? Because he had a poor, poor chance of prevailing at trial. So two points, Judge Wilkinson. Well, three, really. One is I don't necessarily agree that it was that easy. But two, even assuming that you're right, that it was an easy case, even if there's a chance, even if it's a small chance that a jury will acquit, why not take the chance in his position where he has almost nothing to gain from pleading guilty? This excessive responsibility reduction got him almost nothing in the particular facts and circumstances of his case. That's why he had a slim chance of prevailing. That's based on the assumption that he would get a bottom of the guideline sentence. And maybe that's a reasonable assumption in your district. I get you all sort of have debate about that. But that's the assumption, right? That if he had gone to trial, the judge would have still sentenced him at the bottom of the guidelines, not 235 months, which would have been a real benefit from 180. So I wouldn't necessarily phrase it as an assumption. I think it's when you have to factor in all of the totality of the circumstances here. One of those is what the guidelines would have been, 188 through 35. The other is what his mitigating arguments would have been. And we think they would have been down to 188, maybe down to 180. But we think at the very least, it is unlikely that he would have been sentenced to this high end of the range. So we think he had very little, if anything, to gain. And that's how the error impact on his decisional calculus at that point. And the other final response to Judge Wilkinson is even if you assume this is a super easy case, that shouldn't matter under Henderson. Because again, Henderson, the defendant there had admitted that he killed the victim. And the court assumed that if he had known about this element, he would have pled guilty anyway. Nonetheless, the court sent it back to allow him, to allow the defendant to make that decision in the first instance. I understand, but if the case was as difficult and he had as good a chance as you indicate, you think he has, why are we not, why was there no motion to withdraw the plea? Why is there no indication that he would withdraw the plea? So I'm very glad that you asked that question, because I wanted, and one of the first things I wanted to point the court to before, and I failed when I apologized, is that one thing I didn't point out in the brief that I should have, is if you look at Joint Appendix page 26 and Joint Appendix page 32, he was specifically instructed that even if this sentence is more severe than you expected, you will have no right to withdraw your plea. It is inappropriate, I think, for us to ask him to withdraw his plea because he got this higher sentence when he was specifically instructed, if the sentence, and I'll quote it, if the sentence is more severe than expected, you will still be bound by your plea and you will have no right to withdraw it. In light of that very clear directive at the plea colloquy, I don't think this court should hold his failure to file a motion to withdraw. Well, there are two types of harmless error analysis here. There's a government's ability to prove the knowledge of status, and then there's the harmless error question under Massenburg, which is a totally different question dealing with the ACCA enhancement, and whether he knew. The inquiry, I think, is pretty much the same, which is a probability inquiry, but the factors that bear on the two reasonable probability inquiries are a bit different. And so I don't think you can cut them up that way. I think that the Supreme Court is clear, and this is why we're asking the court to clarify Massenburg. We think that when you're in a reasonable probability world, you're always considering the totality of the circumstances. So that means if you're in the Rule 11 land, you're still considering that land, you're still considering that his sentencing calculus makes it, as Judge Floyd put it in the panel opinion, nonsensical for him to plead guilty just to get this benefit of the acceptance. So I don't think it's appropriate for the court to separate them out and put them in separate silos in that sense. Mr. Carter, let me start where you started. Don't you think it's better for district court to have a shot at the rehab question in the first instance since we came here on the panel for another reason, and you have a chance for them to work that out. You can see from the questioning, do you still, are you equi-posed on that question? Your preference on that now still? So I just... A very direct question, and I'm asking, I think you understood, don't you want district court in the first instance to work these things out, to look at them, since that's not what was the invitation of the party here today. This is really not what we came here for. So I just want to be sure, Judge Gregory, that I understand your question. What I don't want is for it to be just renamed for the district court to consider the issue in the first instance. What we do want is for the plea to be vacated for it to go back to the district court where all of these issues can be sorted out in the first instance. In other words, we think that the proper remedy here... You need the plea to be vacated in order to reach a remedy? That's your position? Yes. We think that the plea has to be vacated. We do not think it makes... From this court, from this court, we have to do that here, and then you have no recourse in the first instance in the district court. That's your position? So my position is not that we have no recourse. My position is our preferred remedy, the remedy that we think is appropriate, is for the plea to be vacated. We think it doesn't make a whole lot of sense to send it back to the district court to wrestle with these structural error... Oh, you've answered my question. That's fine. Thank you, Mr. Coburn. Ms. Gray. May it please the court, Amy Ray for the United States. This court should affirm the judgment of the district court because Lockhart has not shown a reasonable probability that he would not actually be guilty, either if he had understood the Rule 11 error, or if he had understood the extent of the knowledge element of the felon and possession offense. Dominguez-Benitez, the Supreme Court tells us what a defendant has to show for reasonable probability, and I want to note three particular points that Dominguez-Benitez makes. First of all, the court is supposed to consider the entire record, to be informed by the entire record. The court also, secondly, considered in that case what the defense lawyer said about whether or not the defendant intended to plead guilty or go to trial. And additionally, the Supreme Court of Dominguez-Benitez considers the strength of the government's case. Now, all three of those factors weigh against a finding that the defendant has satisfied his significant burden. Ms. Ray, can I ask you maybe to respond to one of the last things your colleague said? This is an unusual case, right, in that we have both an extremely substantial error in notifying the defendant of his sentencing exposure, the most important part of a defendant's decision about whether to take a plea, and as it turns out, he pled guilty to the wrong element. I mean, when you put that together, this looks like an extremely unusual case. Do you have any response to what happens when you put these two errors together? Well, I do. I mean, I first want to say, Judge Harris, that I don't think that he pled guilty to the wrong element. He was charged with knowledge, and he pled to knowledge. Well, we don't understand the scope of that element. Well, the court explains in Raheith, that's not how they see the elements. They say the elements are possession and status, and that he pled guilty to status in this case, but he should have pled guilty to status with knowledge of status, right? Well, I think... And that's the way the court breaks down the elements in Raheith. They don't think knowledge is an element. They say possession, firearm, status. Those are the elements. Your Honor, with all due respect, I think the court says knowingly is an element, which it gets from Section 924A, and it says that the knowingly element applies both to possession and to status, and so it's the same element, which is why there's not an indictment error, which is not really what Mr. Carpenter is resting his case on anyway, but so there is... He didn't... ...with whether or not he pled to the element, because I think he did. That said... But before rehab, that is not the way the government has proven status in these sorts of cases. All the government has had to do before now is put a certified conviction record before the jury or the court, not prove that he knew he was a prohibited person. So the fact that nobody in the courtroom, including the judge, knew the proper element has to be reason to vacate and send back. Your Honor, if we were here where the defendant had preserved the error, that might be true. The government is not contesting that there was an error. The government is not contesting that there was a claim error. No one knew that that's a possibility. I mean, so... Raheith? ...did, Your Honor. What? Right. Mr. Raheith knew that it was a possibility, and in fact, challenged the scope of the knowledge element. And that's exactly what Lockhart could have done in this case. This is not a particularly unusual case. And I want to note that, for purposes of the structural error analysis, that we have decisions all the time that correct this court and others on the scope of an element. It's a statutory interpretation error. It is not that unusual. It happened in Santos. It happened in Skilling. It happened in Skilling. Mr. Raheith, how do you address the language in Benitez's, am I getting it confused here, Dominguez Benitez, that says that this conviction proved, contention proved, that is, that the petitioner, neither he nor his counsel, correctly understood the essential elements of the crime with which he was charged. Were this contention proved, petitioner's plea would be, contrary to the view expressed by the Court of Appeals, constitutionally invalid. Now, if you have a constitutionally invalid plea, how do you apply a reasonable probability or harmless error analysis? And do you have any case that says that where there is an invalid plea, unconstitutional plea, that a harmless error analysis applies on direct appeal? Your Honor, the language that Your Honor is quoting, I think, is from Boothley. And what I would say is, whether it's Boothley, it doesn't matter. What I would say is that what the Supreme Court has recognized is that innumerable constitutional errors are still subject to plain error. Well, but that's why we have Chapman v. California. There are constitutional errors of all sorts. But that doesn't end the inquiry. The government has to prove harmlessness under a constitutional standard, as opposed to plain error, where the burden shifts to the appellant. But the fact that it's constitutional error, that doesn't suddenly make Chapman v. California. I apologize. I think I— I thought the language was— The language Judge Keenan read was constitutionally invalid, not constitutional error. Right. The plea itself becomes invalid. And if a plea becomes invalid, you see what I'm saying? I do, but I— How do you apply a harmless error analysis? The decision is already made, isn't it? Your Honor, I don't think so. And there's no case that holds that it does. Even Mr. Carpenter recognizes that he's out on the only case he's relying upon is Henderson v. Morgan, which is a 1976 decision that nowhere addressed structural error. Right. But can you— can you point us to a case, then, on— on direct appeal review, where the court has held that a plea is constitutionally invalid, the plea itself is invalid, and then applied a harmless error or reasonable probability standard of review afterwards? I don't know if I can tell you a case where they've used the language constitutional invalidity. What I would say, though, is that there are numerous cases where there have been constitutional errors of all kinds of magnitudes. Right. And I'm talking about a guilty plea. Right. And whether it's knowing and voluntary. But there would be no reason— the reason— let's say— let's say this. The reason that it's constitutionally invalid is important. It has to inform this court's decision. What is a decision after the fact from the Supreme Court that told us more about the scope of one element? Even post Bailey and all of the other decisions that I've cited, I'm not aware of any case in which a court held that a plea that had been entered before Bailey, before Santos, before Skilling, and therefore at a time when the parties didn't understand the full scope of the element, that that was not subject to plain error review and it's dead with structural— But don't you think the Supreme Court was kind of dodging the issue in Rahape when it sent it back and said we express no opinion on what the government should have to prove? Well, that— what it was talking about in terms of what the government had to prove was specifically whether the government had to prove something more than simply— Of knowledge of status. Right. Right. But not the standard of review. The court was not addressing the standard of review that should apply— Right. They don't say anything in Rahape about the standard of review, do they? Other than the possibility that it could have been harmless. And that should— If it was going to be structural error, why would they ever have remanded the case for a harmless error inquiry? They could have just said, they know how to do that. As I said, it's a term of art. They didn't use it. They remanded the case for a harmless error inquiry and as far as the use of the term constitutionally invalid is concerned, people say, oh, validly doesn't matter because it's collateral review, but validly use the term constitutionally invalid and then you read on in the opinion, did that bring everything to a full stop? As my good colleague suggests, no, it did not. All it did was give Bowsley an opportunity to raise a colorable claim of innocence. It did not bring proceedings to a full stop any more than Rehab brought them to a full stop or whatever. We are getting way out in front of the Supreme Court with this kind of theory and it's going to be negating harmless error and plain error review, which are factually based. And we're going to be blinding ourselves to facts. We're going to be blinding ourselves to what the facts show about knowledge and status. We're going to be blinding ourselves as to facts on the strengths of the government's case and there has to be a limit to the extent that the criminal justice process can take total leave of the facts and blind ourselves to the circumstances and facts of an individual case. Right. Thank you, Judge Wilkinson. And I do want to respond. In terms of Bowsley, I want to note that not only did it not take it to a full stop, but the court held that legal innocence when it was addressing the scope of actual innocence didn't require just legal innocence. It required factual innocence of the offense. Right. And the fact it was on collateral review is irrelevant. I'm not suggesting that it was irrelevant, but I do think that if it were such a serious error, that it was structural error, the court would not have engaged in all of that additional analysis, particularly because it came before Weaver, which established that post-conviction cases are sufficiently different. Ms. Ray, if you could assume it's not structural and we're doing the reasonable probability issue, and you need to combine both the error on the Rule 11 and the error on the knowledge. Those facts that you don't normally see, you have two constitutional errors, what's your position as to whether or not that constitutes a reasonable probability? Thank you, Judge Padova. As the name lists off seven facts, four of them relate to Rule 11 error, and three of them relate to Ray Haidt. On Ray Haidt, we know three things. We know that he served at least 76 months in prison. We know that he was shoving the gun underneath the seat of his car, and he acknowledged that he was doing that. And we know from his allocution that he specifically said he knew he was a felon. So even if the scope of the- That was after the plea, though. It was after the plea, Your Honor, but it is information that this court can consider. But you couldn't have used it at the plea proceeding, because you said it after the plea. That's right. Oh, he had a different day. Right. But that still is evidence that he knew, and the burden is on him. It wasn't evidence that he knew at the time he pleaded guilty, because he hadn't said it. No one is- I am not suggesting that he knew the scope of the element. What I am saying is that at the time he pleaded guilty, we have every piece of evidence suggesting- The first two things you talk about would apply, but the third one, going out the fact that he said he was a felon when he was going to be sentenced, was well after the plea of guilty. It was. So let's assume we don't have that piece of evidence. I think it's important what he says on page 47 of the JA. I knew I was a- I apologize to the United States for possessing a firearm when I knew I was a felon. So he's saying, I knew I was a felon when I possessed a firearm. That's right. Thank you. I gather the issue is that- The government has to prove that element. And the government was not prepared to prove that element because nobody knew it was a required element, including the court. He didn't have to admit anything at the plea proceeding, did he? No question. But the question- It's a different issue. The issue is whether had he known, would it have made any difference? Exactly. Thank you. And clearly he didn't know, the court didn't know, the attorney didn't know. Right. But the question is, would it have made a difference had he known and they failed to tell him? And he basically says it wouldn't have made a difference because I knew I was a felon. And he has the burden. He has the burden based on the information that we now know to prove that he would not have pleaded guilty had he understood that the government had to prove that at the time he pleaded guilty, he knew he had been convicted of a felony. But he has, obviously, he has a right to put the government to a test. And Mr. Carpenter has explained that there was little upside, if anything, to pleading guilty. Put that on top of the fact that the government now has to prove this additional subcomponent of knowledge. And I get the point that it seems like it might not be a heavy lift. Why isn't that enough to tilt the balance? Well, I would like to dispute the suggestion that Mr. Lockhart had nothing to gain from was the security of knowing that the guidelines were going to advise a term of 180 months in prison instead of 188 to 235. And this court has recognized many times that any deprivation of liberty is significant. And I would suggest that eight months, knowing that the range of sentences guidelines are going to advise eight months less is not chump change. That is real time of a person's life. He had reason to plead guilty here. The government's proof was overwhelming of his guilt. And yet the government's proof was overwhelming. But isn't Judge Richardson's point a good one here that had he gone to trial, there was no guarantee that at sentencing, given the guidelines range, that he would have been sentenced at the bottom of the guidelines range. So, I mean, he knew he was getting the eight months. But if he'd gone to trial, all bets are off. That's right. And as Judge Richardson points out, we just can't assume after trial that, oh, well, there's going to be a bottom line sentence under the guidelines. It allows a district judge after trial to have gone to 235 months. That's right. I mean, I am saying that at a minimum, what we have is he knows the guideline range is eight months lower at the bottom. Okay. At a minimum. I'm sorry. I thought you'd finished the sentence. I apologize. I've now finally found the language. You can interrupt me any time you want. No, no, I apologize. And if you need to finish that thought, please. I'm good. Thank you. Okay. I've finally found the language from Dominguez Benitez that I wanted to bring to your attention. And what the court was doing in that passage, I would posit to you, is distinguishing Rule 11 errors from whether a plea is constitutionally invalid. And the court with a constitutional question whether a plea was knowing and voluntary. We do not suggest that such a conviction could be saved even by overwhelming evidence that the defendant would have pleaded guilty regardless. The Supreme Court said that in Dominguez Benitez at page 84. So the court was, in my view at least, and this is what's troubling me. I understand exactly what you're saying, you know, the defendant being in jail for, you know, all those months and everything. But the Supreme Court seems to be saying that the voluntariness of the plea, if it's not voluntary, unlike a Rule 11 error or other errors, it can't be saved. Your Honor, I don't think that Dominguez Benitez holds at all that this error is structural. Well, what about the language? Forget structural. Forget structural. It seems to me that we're at the language of what they're saying. They're saying such a conviction can't be saved by overwhelming evidence that the defendant would have pleaded guilty regardless. So what does that mean? Why did they say it if they didn't mean it? That language is not, I'm struggling to remember where in Dominguez Benitez is. Yeah, it's at page 84. And I hear that, so I'll be happy to take a look at that while I answer questions perhaps, but I don't want to delay. Can I make a suggestion for you? I appreciate that. When the Supreme Court says we don't suggest, that they mean we're just not suggesting, like we're just not expressing an opinion on this question. This is a different question. Well, and I would suggest in response, they're saying nobody can suggest that an involuntary plea is subject to being overcome by evidence of overwhelming evidence. It's not even, it's a question of the burdening. What we know without a doubt is that what Dominguez Benitez says is the burden is on the defendant to show a reasonable probability that an error, and that Dominguez Benitez is particularly helpful with respect to the Massenger rule of an error, because that's the context in which Dominguez Benitez was speaking of plain error. It was not considering, to the extent it says that, I would say it's dicta at a minimum, because before Dominguez Benitez, there was no claim of constitutional invalidity of that plea. So it can't hold that it's structural error. No, I'm not saying that it does. I agree with you, it's dictum. I'm just saying the Supreme Court seems to be saying it's an absurd proposition to go behind an unconstitutionally, an unconstitutional. Mr. Ray, isn't it something, we talk about structural, the art, but isn't it something just intrinsic about our system of justice that this offends? The young fellow was told at the plea that his maximum sentence would be 10 years. That's what he was told, and the judge, have you heard that? Do you understand that sentence? Yes, I do. And no one cleared that up other than his lawyer who walked over to the counsel for the government, which I still don't understand that at all, and saying, well, I told him about the 924E, but no one ever said, or the judge said, wait a minute, it's a mistake. No, it's not 10 years now, it's 15 minimum. No, isn't something wrong about that? For example, if someone was tricked out of a jury trial, so you don't have a right to a jury and you plead guilty, we wouldn't come back and say, no, we would have convicted you easily. No, we would say something about a right to a jury that's so intrinsic about justice. That's what the structure is. It's not just a maze and that kind of thing. It's happening like, what is rock bottom, the bedrock of our system of justice that you can't trick a person. I don't mean trick someone deliberately did it, but you can't have a person plead guilty thinking I can't get more than 10 years, and then you give them 15 years. That boy was, he was 15 years old when he was found guilty of those other offenses, right? And you said, well, he spent 76 months, but there are a lot of deferred sentences. It's amazing. The least of those in the court was he, but he's the only one that has to bear responsibility. What about the court? The court read the PSR. Why didn't someone say that's a wrong? Wait, before you plead guilty, let's get it straight. You can get more than 10 years, and now we put all the burden that he has while his arm was there with the structure. That to me is something intrinsically wrong. Can you address why aren't you helping that interest in our system of constitutional justice? Your Honor, I'm happy to address it because I'm not the one that's placing the burden here that the Supreme Court is. I didn't, the Supreme Court has said that. By your interpretation of such, but I'm not sure what Kenan ran it in terms of that. No, it's talking about, do you think it was suggested you could trick a person, for example, into pleading by saying, you know, you can't get more than five years, and then so I plead guilty. Then it's, oh, it's 15, but you can't prove that you wouldn't have gone to trial if I told you the truth. You think that Supreme Court said that's okay? Your Honor, what the Supreme Court said is that if it's on plain error review, the defendant has the burden to show it, that it affected his decision to plead guilty with a reasonable probability, not a possibility, a probability. That is the burden the Supreme Court places on defendants. It's not the government that places that on the defendants, that's what it is. And I appreciate your Honor bringing up the trial by a jury. That's a different kind of error. If you didn't get a jury trial, that's a very different type of error. Rule 11 colloquy happens all the time. And I, with all due respect, I think that the defendant's counsel was serving as an officer of the court. He knew there had been an error and he was letting the court know. My client, when he sees that there was an error... Prosecutors have an obligation too. Defense lawyers should get it straight. They make mistakes, unfortunately, too many times. The prosecutors make mistakes too. The prosecutor could have stood up and said, Your Honor, it's 15 years. The probation officer could have stood up and said, Your Honor, we're dealing with 15 years. The law clerk could have gone to the bench and said, Judge, it's 15 years. Somebody in there and a lot of people in there knew about it and nobody fixed it. And now it comes up here and I've got an in-bank court trying to figure out what to do with this guy who was told he could only get 10 years and then he gets 15. He was told during a Rule 11 colloquy, and if Your Honor reviews the cases that we cited in our brief, this happens with me perhaps too frequently, but it happens. But the defense lawyer is not the prosecutor, I will acknowledge, that actually made the statement because the district court allowed the prosecutor to cite to state the branch. No, this is probably like beyond where you can answer, but how does the prosecutor make that error? I mean, it's not... I mean, does he confuse the career offender with the ATTA guideline, the single episode versus the not? I mean, that's a fairly basic error and I'm a little bit with Judge King and maybe I hold the prosecutor to a high standard, but I mean, that's not like a little like, oh, I just got confused. I mean, that's a significant error that I frankly can't understand. Yeah, I'm not going to excuse it other than to say that the 10 years, she obviously didn't think at that moment, she wasn't thinking about the Armed Career Criminal Act, is my assumption. But at the arraignment, they said 10 years, everybody says 10 years, and we talk about this at an arraignment or a detention, they say 10 years, but maybe she's a, maybe this person's ACCA eligible and it's 15 years, but everybody says 10 years then. I mean, the fact that they were convicted before, I mean, did the convictions change? I mean, how does that... No, Your Honor, the convictions didn't change. He was clearly an armed career criminal from beginning to end and I cannot, I can only say that I think it was an honest mistake on the part of... I'm not impugning somebody's motives by any stretch. It was just an honest mistake and the reason that we have all these decisions is because these mistakes happen. And the reason that we have plenary review is because the defendant, not only the government should have noticed or the court should have noticed, and by the way, the probation officers, I understand it wasn't in the hearing and yet the probation officer did identify the mistake in the pre-sentence report. It was an honest mistake. It shouldn't have happened, but... The words that kept taking up then on the fourth prong of the lotto, on the integrity of the judicial proceeding, that's where we got to the fourth prong of the lotto, whether to recognize the plain error. Right. And I would say that particularly in this case, we have... Well, the government can come up here and say, we concede the fourth prong too. This stinks. This should not happen in our court system. Judge King, I will say this. The government did that in Wallace, the Fifth Circuit case, where there was absolutely no benefit to the defendant or the plea. This defendant pleaded guilty because it was to his benefit, and the government simply defending under the Supreme Court standard in Dominguez-Benitez the finality of this judgment. That is the value that the Supreme Court has put on finality. Well, there have been cases where, as I say, an entire element has been neglected, has been omitted from a jury trial, and both in Cotton and Johnson, they said, no, the integrity of the judicial process has not been offended. Those are two major Supreme Court cases, and they say that. And as far as your point about the petition of bearing the burden, I don't think you can dismiss Bowsley on the grounds that it involved collateral review. Because if my friend Judge Keenan's statement that the conviction cannot be saved, if that were a categorical statement, then why in Bowsley did the petitioner still have to bring forward, consistent with his burden, a colorable claim of innocence in order to gain relief? In other words, that cannot be saved language is contradicted by Bowsley itself, and what the petitioner, the burden that the petitioner still had to bear, and the Supreme Court has simply not linked structural error with elements, misstatements, or omissions. That linkage has not been there. It has not. Almost every appellate court, of course, who's considered indictment error has held that it's not structural error. I do want to- Let me ask you a question because it's sort of bothered me from this perspective. We spend a lot of time on these cases engaging in the kind of academic colloquy that we're dealing with now. It's a three-factor test and that's something we have to apply. Rehab, what is the extent of that? The bottom line is the word error keeps popping up. Judge Gregory, Chief Judge Gregory alluded to that. Shouldn't we have some obligation to say, here's the law, don't do it, and move forward from there so that we don't have to keep standing here trying to figure out, well, how is it that we can, for those who are so inclined, keep the defendant from having to go back to another trial or how can we get him back to a trial? When the bottom line is, just don't do the error. In this instance, it is very simple. This is not a difficult case. That's what's incredible about this case. You tell a guy he's getting 10 years. Well, no, he's not. He's going to get 15. Then he's facing and he's young at the time. Why not send back something to the trial court that says, just don't do that? I'll tell you why. Then perhaps you won't have to come up and tell me why because at that point in time, they would have done it. In other words, the bottom line is when we look at our cases here from an appellate perspective, we seem to be losing sight of fairness and what is right in the trial process, both from the defendant, from the prosecutor, and from the judge. Let's do these trials right. Every time we give trial judges an excuse to not do it right, you can get sloppy. You can say, well, appellate court up there said, well, okay, he's going to get it anyway, so I don't have to worry about that. But if you gave a black rule on it, don't you think it wouldn't happen again very often? I actually don't, Your Honor, because I don't think anybody actually intends or thinks about it in that kind of way. Because it's not a black line rule, is it? Well, no. In fact, and that's part of it. But you didn't answer my question. I said if it was. If the rule became like in Miranda, if it became you better do it or it won't happen, you think that it would happen as often as it does now? I do, because I think everyone knows that's the way Rule 11 is supposed to go, and nobody intends to commit an error. But here's what I would say. I do appreciate it. I really appreciate it. I still don't understand that. No one means to do an error. This is what you do. You're the prosecutor. This is what you do. You know this law. These are not new cases to you. The defense counsel knows it. The judge knows it. And you say, no one meant to do this obvious error. Is this an obvious error? I mean, it's right in front of your face, fundamentally. One thing that matters to that defendant, if he pleads or not, how long am I going to be in jail? And you're telling me that, well, no one intended to go in and say, guy, you can only have 10, because he's a poor defendant. He has no one else there to stand up for him. And we, the court, are the only thing that stands between young, poor individuals, guilty as they may be, standing in front of court, everything else is all stacked up against them, at least telling them the truth. That's all we're saying, telling the truth. And you're saying that's difficult, because no one intends not to tell them the truth, even though it's obvious, both from the defendant, the prosecutor, and the court. It sounds insulting. Fair enough. I don't think it's insulting, but let me just say this. The Supreme Court has said that it has recognized that this error, this kind of error happens. And it has placed the burden on the defendant. If this court holds that every time a judge or a prosecutor or the defense lawyer makes a mistake, then it automatically means reversal. You are going against, with all due respect, Judge Land, the significance of this error. You would be going against the Supreme Court. We didn't say, okay, we're going to make the prosecutor, we're going to sanction them for not doing it all. I mean, is there some other thing we can do? We just live with it and accept that from time to time, it's not just unintentional. Some of it is pure sloppiness, and some of it is uncaring, and we know it. We can come up here and use pretty words like unintentional or no one meant to do it. We don't know that anymore, and we know that the defendant would have pleaded guilty, as you said, for this eight months that you think that was so valuable to him on this long sentence. I mean, you say that. I understand it is a benefit, but who knows that? But we don't know it was unintentional. What if it's intentional? How are we going to know it? If the defendant's lawyer purposely got up and lied about whether he knew, then there is a remedy. And with respect to what the Supreme Court... That's starting off of what I'm talking about, but go ahead. I'm not talking about the defendant. I'm talking about the entire court over an obvious error, and that error is fundamentally... But what is important to that defendant is how long am I going to be in jail? And that's all this is about, telling the defendant how long you're going to be in jail. That can't be too difficult. Mr. Ray, can I ask you a question about labels? I guess we've been going round and round as to whether or not to call this structural or otherwise, but why do we need to do that if we can just look at Henderson, where I think Mr. Carpenter or somebody had quoted the language in Henderson that said where the court vacated the plea because of a defendant's lack of knowledge of an element, and said that that was the case even where the prosecutor had overwhelming evidence of guilt, that's this case, where the defendant had counsel, that's obviously this case, and where the defendant's decision to plead was wise, and you've insisted that that's this case as well, and the court nonetheless sent the case back. Why don't we simply say this is Henderson? For two reasons, your honor. First of all, Henderson didn't address whether it was structural error or not. Well, that's exactly right, so we don't need to get into that. We can just look to Henderson and say this is Henderson. Well, it's not Henderson for a couple of reasons. First of all, in Henderson, he was never charged with second degree murder and never knew that intent at all was an element. Here, he was charged with felony possession offense. He did not know, in this case, the full scope of the element. That seems to me to be a distinction without a difference in this case. I don't accept that, but I understand your honor's perspective, and we can agree to disagree on that point. Now, the question, though, the next thing I would note is that even in Henderson itself, the court considered whether there was evidence that the defendant knew. So, if there was evidence that the defendant knew about that element, as in this case, there's at least evidence on the, well, I'm sure I have a good chance. Concentrated in Henderson on the particular characteristics of the defendant, did they not? They did, and they did. So, it was factually based. So, there was some assessment of the facts in Henderson before they remanded, but I also would note that this was before the whole concept of structural error had even been developed, and it is also a post-conviction case. David, but the court in Henderson wasn't talking about what the defendant knew when it said the plea could not be voluntary. He said, the court said the plea could not be voluntary unless the defendant received notice of the true nature. That's the obligation of the court. Right. It could not be voluntary unless the defendant received notice of the nature of the charge against him. The first and foremost universally recognized requirement of due process. Right, and we have that here. We have an indictment that told him he had to have possessed it, it had to have been knowingly, and it had to have moved in interstate commerce. But the court never told him that. The court did tell, he did understand the knowing, he did understand it had to be knowingly. What we didn't understand was the scope of that. Knowledge of status. That's right. We didn't understand the scope of the knowledge requirement, but that, our indictment tracks the statutory language, and that's all that an indictment has to do. The court didn't tell him 15 years. The court did not tell him 15 years. But what we, well, I'll say, that's right, but the probation office did, and we knew, we know that the probation office not only identified the error, the defendant specifically said he had read and understood the pre-sentence report. And I will note that in a number of those favor circuit court cases. Apparently the government did not read and understand the pre-sentence report. I go back to what Judge Wynn said. Why, on the 15 years, why isn't the government getting this right? Because before we ever get to his burden, the defendant's burden up here now, the government has the burden and the obligation to get things right when you're sending people to jail for substantial periods of time. No question, but I don't think there's any. You used to disjunct it a while ago, talking about the defendant and the government and the judge and or, and or, and or. It's and here. You have to put a conjunctive in there. All of them had missed it. They missed it at the Rule 11 hearing. Nobody missed it. And he's the most uneducated person about the legal propositions in the courtroom is the defendant. All these other trained lawyers missed it. They missed the, they've missed one misstatement in a Rule 11 colloquy. These things aren't hard. These guilty pleas aren't hard. I don't, I never thought they were difficult at all. Fair enough. Just check it off. I totally agree, but there was a mistake here and it happened. Ms. Ray, you know, the disagreement on the facts of the case is one thing, but what concerns me far more is that some of the statements and the appellant's position is a thinly veiled attack on the presence of harmless error review and plain error review in the, in the, in the first place. And if we go a good distance in negating plain error and harmless error, which the Supreme Court has repeatedly affirmed on the grounds that people deserve a fair trial, but they don't always get a perfect trial. And we're looking at it as a whole to understand whether it was fair. And human beings do make mistakes. The Supreme Court has recognized that practical fact. It has repeatedly affirmed the utility of plain error and harmless error review and to the extent that we go to the structural thing or to say that, that this automatically leads to this consequence, we're going up against a mountain of Supreme Court precedent. And again, the criminal justice system to some extent has to be based on the facts of individual circumstances and the facts of individual cases and the facts of individual knowledge. And to the extent that we try to make an absolute rule or a structural error rule, we're entering, I think, into very dangerous, treacherous territory where the Supreme Court and Rehab and Bousley and any number of cases has not gone. That's right. And I want to, if I may, I know I'm well over time, I'd like to just respond quickly to that. First of all, footnote 9, as Dinesh has said, the plain error standard is supposed to be difficult. It is not supposed to be easy. We may like that. We may not like that. That's what the Supreme Court says. Second thing I want to note about that is that this error is, even the Hayib error, is very different in nature to the other kinds of structural errors that the Supreme Court has recognized, whether it's a denial of counsel of choice, there's not a public trial, there was not a reasonable doubt instruction, things that infected the entire framework. This defendant was subject to an ordinary framework. He had the opportunity to plead guilty. He had the opportunity to challenge, as Ray Hayib did, the scope of the knowledge element. The framework within which he pleaded guilty was sound. And so it is not the same as the other kinds of structural errors that the Supreme Court has recognized. I'm sorry, I know you're over time, but can I just, one last, one question. Even within plain error, if we were, I'm thinking about the Rule 11 error, sorry, not the Ray Hayib error. On Rule 11, even within plain error, right, that we at least have acknowledged that some errors may be presumed prejudicial, right, even that that is not inconsistent with doing plain error review, and we discussed that in white. And we said there that with ordinary sentencing errors, we're not going to presume them prejudicial. There's no need to do that because the district court judge explains the basis for the sentence. So if there's been a problem, you know, we'll know. It's right there in the explanation. We can, from that explanation, we can infer, would the district court have done the same thing, but for the error? If the defendant doesn't explain his reasoning in plain error, and it does make it really hard in a case like this, at least for me, where you're looking at this massive error, just in terms of, you know, both the substance of the error, the part of the Rule 11 colloquy that went wrong, and then the magnitude of the error. Right. And what looks at least like a fairly significant effect on the benefit from the plea. There may still be some benefit, but it's not what it would have been, but for the error. And because the defendant doesn't say when he takes the plea, look, here's how I'm thinking about it. That eight months was really important to me or not. This does seem like the kind of case where it is very hard to show prejudice. We don't have that explanation that we had in the white case. So how do we factor that in? I think it's a fair point that in cases like this, we don't have, I'll compare it to Stania, for example, where we had a temporal proximity between the time that he says he's not going to plead guilty, we have the Rule 11, and then he's kind of easy to trace the pattern of that error. And in a case like this where you don't have exactly the same thing, it can be more difficult. But I would respond with a couple of things. First of all, of course, the burden's on him, and that's important, and it's not something that this Court has the power to change. Right. But sometimes we still presume prejudice. The burden's on him, but... Right. But it wouldn't be fair to presume prejudice when you have a couple of things that we have here. First of all, we have the preceptor foretold him about the error, he said he read it, he didn't complain. More importantly, we have the defense lawyer and officer of the court with a duty of standard who said, at the time he pleaded guilty, he was fully aware. He was fully aware of the possibility of the armed career criminal... Well, during the arraignment, he was also told that if he had the three offenses, it would be an act of violation, and says, while his criminal history hasn't been computed, the ASUA on the case thinks that might indeed apply here. That's right. Not only that, but I do want to explain it with respect to what his lawyer then said, because I think that the defendant doesn't clearly say. What his lawyer then says is, we understand it could be 10 years or more, but we are arguing in favor of the 10 years. So there's no suggestion in the arraignment that his lawyer didn't understand that he faced the possibility... And he was advised two times during the plea colloquy that his sentence may be beyond what is identified, be more severe, and he recognized the possibility. Yes. I think, in fairness, that that part of the rule colloquy is usually referred to... I thought the government conceded plain error. Judge King, sorry. I thought the government conceded plain error. Absolutely. Okay. Well, then I thought I did sound like you and Judge Niemeyer. My question wasn't suggesting no error. It was suggesting question of precedent. Right. We conceded plain error. The question, though, is whether or not the defendant can show that that error affected his substantial rights and his decision to plead guilty. Right. You don't concede the third wrong, you don't concede the fourth wrong. That's right. In fact, then, that he has evidence of diminished mental capacity, too? Thank you for asking that question. You're welcome. The only evidence... Well, because it's something I wanted to get to. The only evidence that we have is that the defendant has a disability within the 90s. And your point is what? Your point is what? Is that the usual? No. I want to know what your point is that, like you said, duh, like that's usual? No. I'm saying that I'm not sure that that qualifies as a disability. It would qualify as below average. Why not? Why would it be? Would it be for most people in America saying, oh, your child is in a 90 percentile intelligent quotient? Do you think so? He only said within the 90s, and he has some learning disabilities, but the precedent report says... Why wouldn't it give you pause, Ms. Ray, in terms of diminished capacity? It doesn't give me diminished... He's arguing that it's diminished capacity as to whether or not he knew that he had been convicted of an offense for which he served more than one year in prison. I would respectfully suggest that an IQ in the 90s doesn't mean he isn't aware that when he served 76 months in prison, he had served for at least 12 months. I don't think it's that kind of intellectual disability. And in the precedent report, he reported the probation officer no emotional or mental disability. Did you say that based on any knowledge of the Iowa scale or the Wechsler scale, or is this just your opinion? Your Honor, I'm not going based on any scientific information. Well, there is no moment that you talk about that because you said you're not at pause. It would give me pause. I think it would give most people pause, but it was interesting how you said that that wouldn't give you pause in this case. Would it give you pause that he was 15 years old when he was sentenced? I think that that is evidence that this court can consider in the calculus. I think the IQ within the 90s is something this court can consider within the calculus of deciding whether he understood he had been convicted of an offense punishable by more than one year in prison. All of that is fair game. His IQ score is not in the record in terms of we don't have the particular scales that Your Honor is referencing. We don't have any of that scientific information. We have one point in increased sentence objections that he had an IQ in the 90s. The defendant has characterized that on appeal as an intellectual disability, and I'm just saying I think that might be slightly overstated, but it is fair. This court considers and says that that's not overstated fair enough. He still hasn't shown a reasonable probability that he wouldn't be pleaded guilty. He knew that gun. He knew he wasn't allowed to have that gun, and we know that because he shoved it under the seat. We know that because he said it in his allocution, and we know that because he has served more than 76 months in prison. Don't you think you would shove the gun under the seat, too, if you were a non-prohibited person, a police officer walking up? He said, oh, my goodness. I've got to permit him. I'm not a felon. Oh, let me get this down here. That's pretty naive. You think most people wouldn't want to hide that. Oh, here it is right here. I'm not prohibiting it. No, I'm not saying that you wouldn't. I think, actually, we've had some cases in this court where folks didn't hide the gun. I don't know. I do think that if, as Mr. Carter suggests, it was a sort of fear of the police, he probably would have put his hands up rather than touching them if he were scared that they were going to, you know, escalate the situation. Anyway, this court can consider all of the facts, and the last point I do want to make is no one ever suggested that Massenburg established a three-factor test. It didn't. This court in Massenburg did exactly what it's required to do the record. I challenge anyone to find in Massenburg that it is a three-factor test. It simply says, these three facts in this case weigh against finding that the defendant has satisfied his burden. Well, then we should clarify Massenburg, then, so that people... Your Honor, Judge Thacker, I don't think so, because Massenburg does exactly what the main destiny says, which is to consider the entire record. There's nothing to clarify. Under this entire record, the panel apparently thought there was, and with all due respect to the panel, I think the panel misapprehended Massenburg. No one but the panel came up with that idea of a three-factor test. I think that the panel, to the extent it felt bound by three particular factors, misapprehended Massenburg. It certainly did. Well, maybe other courts would, too, and so maybe that's a reason to clarify. Your Honor, this court... In any event, we have whatever we said there. Sure. We're now here on bank. We are, and if this court wants to clarify... And we are over time. Well over time, and I'm sorry. If this court wants to clarify that the whole record should be considered, then by all means. I just don't think it's necessary, but that's all that's the clarification, if there is such that should be. The record, I think we're... I think I've beaten that horse as best I can. Thank you very much. We respect that this court affirmed the judgment of the district court. Thank you, Ms. Rafe. Mr. Coffin, do you have some time reserved? So I'm going to start with the point that Judge Diaz made, that this case is Henderson, and I think maybe I messed up by labeling this as structural and bringing that whole confusion into it, because what I was really thinking, I think, is what Judge Harris mentioned, is that on all three, we should presume prejudice in this context, and I think that's disagree, respectively, with what Ms. Rafe said about the Supreme Court looking to the particular facts before making its remand in Henderson, and at this point, I'm going to recite this in the brief, but just to be clear on what I'm talking about. On 2257, it says, we assume that the prosecutor has overwhelming evidence of guilt. They assume the wisdom of the lawyer is advised to plead guilty. They assume that if the precise mental state issue had been discussed with him, his lawyers no doubt would have persisted in their nightly guilty, and we assume that he would have probably pled guilty anyway. Despite all of those assumptions, the court vacated the plea intent back. We think that it's critical that they do that because of the interest that's protected here, which is the defendant's autonomy interest in making the decision. Which opinion were you It certainly stops short of anything amounting to an absolute rule, because one of the things that Henderson's decision placed a great deal of emphasis on was the petitioner's unusually low mental capacity, and had there been anything, any structural error or absolute presumption of guilt, the Henderson case pointed specifically to a salient fact, which was that the petitioner there had an unusually low IQ and mental capacity. So I don't see Reed Henderson as announcing a broad rule of law and relieving the courts of any kind of factual input. So I just don't agree with that reading, Henderson. I think when you look at all of the evidence of guilt, even assuming he would have pled guilty, I think that does lead us to presume prejudice in this scenario. And I do think that's consistent with the defendant's autonomy interest, because we talked a lot about, did it make sense to plead? Maybe he wanted the security of having a guideline range of 180, or maybe he would have risked it. The point that I'm making is, that's his choice to make. Do I go to trial and risk slightly higher guidelines rates because I think my mitigating factors might get me down to 180? Do I take the risk that I'll serve a few more months, but I'll at least have the chance of an acquittal? That's his choice to make. And I would analogize to the recent decision in McCoy, which reverses on a direct appeal based on a violation of the defendant's autonomy interest. In that case, the court held that it was per se reversal, where the defendant didn't want to admit guilt, but his lawyer asserted guilt. But what you're saying there, and what you're doing there, really comes very close to doing away with the reasonable probability standard altogether. I do away with it in this particular context on this particular error. And that's why, Judge Wilkinson, the concerns that you've expressed are misplaced, I think, because our rule is very narrow. We're talking about these particular probability. Anytime the reasonable probability standard is applied, you could make the same argument that you just made. And that is that, as I understand it, you're saying almost that the reasonable probability standard almost per se deprives the defendant of a constitutional right. So I want to be very clear, that is not what we are talking very specifically about this type of error, where the defendant fails to understand the full name, the true nature of the offense. That is a distinct error. It's very different than the other rule 11 errors. It's different than other constitutional errors. And the Supreme Court, we think, recognized that one in Henderson, in the way that it treats this as per se reversal, despite the evidence of appeal. We think it's also consistent with the footnote 10 in Dominguez as Judge Keenan has pointed to, where it says, if we have a plea that is tainted by constitutional error, as a constitutional due process error, as opposed to rule 11 error, that we are not suggesting that even overwhelming evidence could force a defendant to stick with that plea. Again, we think that this is of high interest. In McCoy, it was the defendant's lawyer who asserted guilt on his behalf. The Supreme Court said, that mandates reversal. That's the defendant's choice. We think, if this court affirms this plea... Why do we have a constitutional harmless error standard under Chapman v. California for constitutional error? Because it applies to almost every other constitutional error. This one is different. The Supreme Court has treated it differently. We think that it is different because... Excuse me. I'm sorry to interrupt you, Mr. Carpenter, but are you talking only about the Massenburg error right now? Is that correct? No. I'm sorry. You're trying to talk about both of them. I'm talking about the Rehave error. You're only talking about the Rehave error? I'm talking about the Rehave error, and I'm sorry for the confusion there. I concede under Dominguez-Benitez that the Rule 11 error by itself is subject to reasonable probability. There's no dispute about that. Okay. We are talking about the error should... the prejudice should be presumed in the context of the Rehave error. Because of Henderson, because of Dominguez-Benitez, we think it impacts the defendant's autonomy interest. And that's the point that I want to make. The government suggests... Or if you're going to presume error as a matter of course in a Rehave situation, it doesn't make too much sense as to why the Supreme Court would send it back. The reason, Judge Agee, is because that wasn't briefed. That was... the threshold issue was all that was briefed and dealt with in Rehave. The dispute... But they say the government asked that to do it. That's not a big hole for the Supreme Court to leave. No. That's very common practice for the Supreme Court to say, look, you've got this... Every court has gotten the interpretation of this statute wrong. Here's the right interpretation. Court of Appeals, District Court, you figure out what to do with it. Okay. Mr. Carpenter, then let me see if I'm understanding you correctly. You were saying then that we're talking about a Rehave error, but in Rehave the issue was what the government had to prove with regard to Scienter. The issue was not whether the plea was voluntary in knowing. Is that the distinction you're making or not? I think so if I'm following your question. No, what I'm saying is that Rehave did not send... I'm asking if this is your position. Rehave was not an analysis of the knowing and voluntary nature of the guilty plea. It was an analysis of the quantum of evidence that the government had to produce in order to establish the Scienter requirement, the knowledge of status. Right. And that is different from whether a guilty plea is unconstitutionally or is invalid in a constitutional sense because it was not knowing and voluntary. Is that the distinction you're drawing? Yes. And Rehave would have had no reason to address the knowing and voluntary nature of the guilty plea because it was a trial case. So it was that issue was not at all... It wasn't a guilty plea case. And that's why your primary reliance is on Henderson and on the dictum in Dominguez Benitez. Is that your position? I don't understand why you think there's such a great difference in why we can carve off guilty pleas as sui generis. It strikes me in both Nieder and Rehave that the failure to have, in both cases, an element of the crime was not even submitted to the paid jury. Now, that relieved the government of its burden of proof because the elements that the government had to prove weren't submitted to the jury. And it seems to me that that kind of error is every bit as serious, if not more serious, than the effort we are talking about and the error we are talking about today. And it was perfectly clear that the Supreme Court thought that both were subject to harmless error analysis. And I don't think you can say, oh, this error is more serious than that error when the other error involved the government's complete failure in a jury charge to present the jury, to present the petty jury with what the government had to prove. So, I disagree with that because I think, in Nieder, the element of materiality was found by the grand jury and it was found by the district court judge. The Senate had every opportunity to contest it. Here, by contrast, and in contrast to every omitted element case, I think the label, when we talk about labels, I think the label omitted element is misleading because here we have a complete, the element is not addressed at any point in proceedings. It's not in the indictment. It's in the factual statement of the plea. It was, so, in Nieder, the difference is that it was there. Everybody knew about it. It was found by the district court judge. Well, I guess it was here in the factual statement of the plea. What was not here in the government's conceded plain error was that the government had to prove knowledge of a felony. But if your point is that it was present in those other cases and it was not in the indictment, I think the procedure below was different than in Nieder because there was at no point, not before the grand jury, not before the district court, not at a trial or a guilty plea, did anyone have any awareness of this element. And that is very different than the omitted element case, despite their label. I thought you just agreed with Judge Keenan that it was just a matter of the quantum of proof for a particular element, not the absence of an element. And so, if I, I may have misunderstood exactly how she articulated it. What I, what we rely on Riege for is the statement of what the statute requires. It's not a quantum of proof. It's what you must prove. In other words, it adds this knowledge of status element that was unknown to everybody under the Langley decision from this court and from every other circuit court. So, I also am confused by, remember you started out your rebuttal by saying my mind is slightly, I'm slightly switching here and this side of the room seems to understand how you switch, but this doesn't. So, maybe you can tell me where this leads, I guess, where your argument goes. Sure. And so, I don't intend to switch the argument. The argument, I think, is the same, which is whether you call it structural or whether you say you're presuming prejudice under the third form, I think Henderson dictates that because of the way it's I understand that. Okay. And one, two quick points if I may. So, that, that, that's your argument for Riege error. Yeah. And one quick point, there was a lot of talk about the lawyer statement and I want to talk about, as an officer of the court, it must have been accurate. I think there were two points in the record. When you view it in its full context, as the panel did, I think you come to the same conclusion that Judge Gregory and Judge Floyd in their panel opinions reached, which is, it actually weighs in favor of Mr. Lockhart under a reasonable probability standard. Because one, you have the pre-trial hearing where the lawyer is saying, this is 10 years, we don't think it's the Aurora, and so that is inconsistent with his later statement, oh no, he was fully aware he was getting 15 years. And we think that's also backed up by the pro se letter that you filed afterwards. Whereas, Judge Gregory pointed out, that had to, the most likely answer is that it was about the decision to plead guilty. If it was just about he got the lowest possible sentence under this main story minimum. So if he had known that that was what he was getting, the lawyer did great, got him exactly what he wanted, so he had no reason to complain. If there are no other questions, thank you very much for your time. Thank you, Mr. Thomas. Thank you, Ms. Ray.
judges: Gregory, Wilkinson, Niemeyer, Motz, King, Agee, Keenan, Wynn, Diaz, Floyd, Thacker, Harris, Richardson, Quattlebaum, Rushing